UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BATTLE CREEK HEALTH SYSTEM,

                Plaintiff,                          Case No. 5:05-CV-53

v.                                      HON. GORDON J. QUIST

MICHAEL O. LEAVITT, as the
Secretary to the United States
Department of Health and Human Services,

                Defendant.
_____/

## OPINION

Plaintiff, Battle Creek Medical Health System ("BCHS"), filed a complaint pursuant to 42 U.S.C. § 1395oo(f)(1) against Michael O. Leavitt, as Secretary of the United States Department of Health and Human Services ("Secretary"), seeking review of the Provider Reimbursement Review Board's ("Board's") final administrative decision that it, pursuant to 42 U.S.C. § 1395oo(a), lacked jurisdiction over an issue relating to BCHS's request for Medicare reimbursement for costs relating to its Adolescent Residential Program.  BCHS maintains that the Board's decision that it lacked jurisdiction should be reversed since it was "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law."  (Pl.'s Mot. Summ. J. at 3.)  The issue of whether the Board properly declined to exercise jurisdiction over BCHS's appeal is a question of law. Consequently, BCHS moved for summary judgment seeking an order reversing the Board's decision, and the Secretary has cross-moved for summary judgment seeking to affirm the Board's decision. For the following reasons, the Court will deny BCHS's motion for summary judgment and will grant the Secretary's motion for summary judgment.

### I.  Background

BCHS has entered into a Medicare participation agreement with the Secretary and is an approved provider of services under the Medicare Act.  As a provider of services under the Medicare program, Medicare regulations require BCHS to file an annual cost report with a "fiscal intermediary."  The fiscal intermediary – typically an insurance company that acts as the Secretary's agent – then audits the cost report and makes a final determination of the total amount of reimbursement owed by Medicare to the provider for that fiscal year.  The fiscal intermediary sets forth the total payment to which it believes a Medicare provider is entitled in a Notice of Program Reimbursement ("NPR").  If the provider is "dissatisfied" with the fiscal intermediary's final determination "as to the amount of total program reimbursement due the provider . . . ," the provider may obtain a hearing with the Board.  42 U.S.C. § 1395oo(a).

On September 26, 2002, the fiscal intermediary issued the NPR for BCHS's fiscal year ending June 30, 2000.  On March 24, 2003, the provider appealed to the Board two adjustments the fiscal intermediary made to BCHS's cost report.  In July and August 2003, BCHS and the fiscal intermediary submitted to the Board their respective preliminary position papers on the two issues raised in the provider's original appeal.  In November 2003, and September 2004, the parties submitted their respective final position papers on the same two issues.  Thereafter, BCHS discovered that it erroneously included "the costs and statistics for . . . [its] Adolescent Residential Program with the costs and statistical allocations of . . . [its] separately certified . . . distinct part psychiatric [unit]," which resulted in a nearly $190,000 Medicare reimbursement underpayment to BCHS.  Thus, in October 2004, BCHS sought leave to add this issue to its appeal before the Board. On November 2, 2004, the fiscal intermediary filed a jurisdictional challenge with the Board arguing that because the intermediary made no adjustments to BCHS's cost report relating to the Adolescent Residential program, there was no intermediary determination from which an appeal could be taken.

(AR at 7.)  In a decision dated January 14, 2005, the Board agreed with the intermediary and denied

jurisdiction over the issue relating to BCHS's Adolescent Residential Program.  The Board reasoned

that since "42 U.S.C. § 1395oo(a) dictates that to obtain Board jurisdiction, a provider must be

'dissatisfied' with a 'final determination' of the Intermediary . . . , it follows that a provider must

have claimed reimbursement for the items and services from the Intermediary to make a 'final

determination' regarding such items and services."  (AR at 8.)

## II.  Analysis

This case is one of statutory interpretation.  As previously stated, the facts are undisputed and

the matter is purely a question of law.  In particular, 42 U.S.C. § 1395oo(a) provides, as is relevant

here, that:

> [a]ny provider of services which has filed a required cost report . . . may obtain a
> hearing with respect to such cost report by a Provider Reimbursement Review Board
> . . . if (1) such provider – (A)(i) is dissatisfied with a final determination of the
> organization serving as its fiscal intermediary . . . as to the amount of total program
> reimbursement due the provider for the items and services furnished to individuals
> for which payment may be made . . . for the period covered by such report.[1]

In addition, 42 U.S.C. § 1395oo(d) provides that:

> [a] decision by the Board shall be based upon the record made at such hearing . . .
> [and that t]he Board shall have the power to affirm, modify, or reverse a final
> determination of the fiscal intermediary with respect to a cost report and to make any
> other revisions on matters covered by such cost report (including revisions adverse
> to the provider of services) even though such matters were not considered by the
> intermediary in making such final determination.

BCHS argues that the Board's decision that it lacked jurisdiction over BCHS's appeal was

contrary to "the clear and unambiguous language of . . . 42 U.S.C. § 1395oo . . . ." (Pl.'s Resp. at 1.)

In essence, BCHS maintains that a provider can be dissatisfied with its intermediary's final

---

[1] There are two other requirements, which are not in dispute, for the Board to have jurisdiction over a provider's
appeal of its fiscal intermediary's final determination as to the amount of total reimbursement owed to the provider: 1)
the amount in controversy must exceed $10,000 and 2) the provider must file its request for a hearing with the Board
within 180 days after notice of the intermediary's final determination.

determination over a cost for which the provider did not request reimbursement, and, consequently, to which the intermediary did not make an adjustment in issuing its NPR, so long as the cost the provider now seeks reimbursement for was contained in the cost report (albeit as a non-reimbursable cost).  In support of this position, BCHS relies upon *Bethesda Hospital Association v. Bowen*, 485 U.S. 399, 108 S. Ct. 1255 (1988), in which the issue was "whether the Board may decline to consider a provider's challenge to one of the Secretary's regulations on the ground that the provider failed to contest the regulation's validity in the cost report submitted to its fiscal intermediary." *Id.* at 401, 108 S. Ct. at 1257.  BCHS argues that the Court recognized the Board's jurisdiction to review matters covered by a cost report that were not subject to an intermediary audit adjustment. *Id*. at 404, 108 S. Ct. at 1259.

In *Bethesda*, providers of Medicare services issued cost reports to their fiscal intermediaries consistent with a regulation, whose validity the providers wished to challenge, that disallowed certain claims for malpractice insurance premiums.  Since the providers did not claim reimbursement for these costs, the providers, "in the lexicon of the Medicare program," made a "self-disallowance" of these costs on their reports.[2] *Id*. at 401, 108 S. Ct. at 1257.  After the intermediaries issued their NPRs, the providers filed a request for a hearing before the Board, challenging the validity of the malpractice regulation and seeking reimbursement for these costs.  "Because the amounts had been self-disallowed in the reports filed with the fiscal intermediary, however, the Board determined that it was without jurisdiction to hear . . . [the provider]'s claims." *Id*. at 402, 108 S. Ct. at 1257.  The Board held that "its authority to grant hearings is limited to cases in which the provider is 'dissatisfied with a final determination of the . . . fiscal intermediary.'" The Board held that this statutory condition had not been met because providers "could not be dissatisfied when they had

_____

[2] Self-disallowed costs are entered on a worksheet in the cost report, but the provider does not request reimbursement for them, and they are generally not considered by the intermediary.  *See St. Luke's Hosp. v. Sec'y of HHS*, 632 F. Supp. 1387, 1391 (D. Mass. 1986).

effected a self-disallowance of the claims." *Id*. On appeal the providers argued that it would have been improper or irregular to submit a claim for cost reimbursement in a manner prohibited by the regulations, and that it was correct to raise their challenge in the first instance by presenting the matter to the Board. *Id.*

Unanimously reversing the Sixth Circuit, the Supreme Court rejected the Board's view that "a provider's right to a hearing before the Board extends only to claims presented to a fiscal intermediary because the provider cannot be 'dissatisfied' with the intermediary's decision to award the amounts requested in the provider's cost report." *Id*. at 404, 108 S. Ct. at 1258. The Court recognized that while, "under subsection (a)(1)(A)(i), a provider's dissatisfaction with the amount of its total reimbursement is a condition to the Board's jurisdiction . . . , the submission of a cost report in full compliance with the unambiguous dictates of the Secretary's . . . regulations does not, by itself, bar the provider from claiming dissatisfaction with the amount of reimbursement allowed by those regulations." *Id*. at 404, 108 S. Ct. at 1258-59. The Court explained:

> No statute or regulation expressly mandates that a challenge to the validity of a regulation be submitted first to the fiscal intermediary. Providers know that, under the statutory scheme, the fiscal intermediary is confined to the mere application of the Secretary's regulations, that the intermediary is without power to award reimbursement except as the regulations provide, and that any attempt to persuade the intermediary to do otherwise would be futile.

*Id*. at 404, 108 S. Ct. at 1259. The Court pointed out the following example to contrast the *Bethesda* providers from other providers who do not seek reimbursement from intermediaries:

> Thus, petitioners stand on different ground than do providers who bypass a clearly prescribed exhaustion requirement or who fail to request from the intermediary reimbursement for all costs to which they are entitled under applicable rules. While such defaults might well establish that a provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary, those circumstances are not presented here.

*Id.* at 404-405, 108 S. Ct. at 1259 (footnote omitted).

Finally, the Court noted, "[w]hile the express language of subsection (a) requires the result . . . reache[ed] in the present case, . . . [the Court's] conclusion is also supported by the language and design of the statute as a whole." *Id*. at 405, 108 S. Ct. at 1259.  The Court explained that subsection (d) of § 1395oo, which sets forth the powers and duties of the Board once its jurisdiction has been invoked, "allows the Board, once it obtains jurisdiction pursuant to subsection (a), to review and revise a cost report with respect to matters not contested before the fiscal intermediary." *Id*. Furthermore, the Court stated, "The only limitation prescribed by Congress is that the matter must have been 'covered by such cost report,' that is, a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *Id*.

BCHS argues that *Bethesda* establishes that the Board has jurisdiction to hear its appeal because, in BCHS's opinion, the only limitation for Board review is that the cost or expense for which the provider seeks reimbursement "was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *See id*.  The *Bethesda* Court explained that while the Board has the power pursuant to § 1395oo(d) to review matters not contested before the intermediary, § 1395oo(d) only applies once the Board obtains jurisdiction pursuant to § 1395oo(a).  For the Board to obtain jurisdiction pursuant to this section, the provider must be "dissatisfied" with its fiscal intermediary's final determination as to the amount of reimbursement.

In *Bethesda*, the providers were challenging a regulation of the Secretary in the only manner they could.  *Bethesda* is not a case wherein the providers simply did not seek reimbursement.  The instant case is the case that is "not presented" in *Bethesda*.  *See* last quote on page 5.

BCHS also relies upon the majority opinion in *MaineGeneral Medical Center v. Shalala*, 205 F.3d 493 (1st Cir. 2000).  *MaineGeneral* did not follow the Supreme Court's *Bethesda* dictum, but

rather found that the Board has jurisdiction over a provider's appeal of its fiscal intermediary's NPR with respect to a cost for which the provider did not receive reimbursement, even though the provider did not request reimbursement for that cost in the cost report it submitted to its fiscal intermediary. In *MaineGeneral*, the providers listed zero as their claims for bad debts reimbursable by Medicare. After the intermediary issued its NPRs, the providers appealed, claiming that they "were entitled to reimbursement for Medicare-related bad debts despite having listed zero for them in their cost reports," since the "claims for zero reimbursement were mistakes . . . ." *Id*. at 495. In concluding that jurisdiction existed over the providers' appeal even though they failed to request reimbursement from the intermediary in their cost reports, the court concluded that it was bound by its prior decision in *St. Luke's Hospital v. Secretary of Health and Human Services*, 810 F.2d 325 (1st Cir. 1987), a case decided before *Bethesda*. In *St. Luke's*, the provider intentionally self-disallowed costs in its 1979 cost report presented to its fiscal intermediary after its fiscal intermediary had rejected reimbursement for those same costs in 1978. The Board required the intermediary to reimburse the provider for the costs incurred in 1978, but not 1979, without explaining the difference. The Secretary reversed the Board's decision that the 1978 item was reimbursable. The provider sought judicial review in the district court, which held that the Secretary erred in reversing the Board's decision that the 1978 item was reimbursable and that the Board had jurisdiction to hear the provider's "appeal in respect to the same . . . [cost] item in 1979," the year in which the provider self-disallowed an item in its cost report. The Secretary appealed this last determination. The First Circuit, analyzing solely § 1395oo(d), held that the Board did have the power to address the self-disallowed cost item even though it was not first raised before the fiscal intermediary.

Unlike the provider in *St. Luke's*, the providers in *MaineGeneral* did not intentionally self-disallow their costs knowing that it would be futile to request the costs from the fiscal intermediary. Rather, the providers in *MaineGeneral* mistakenly failed to request reimbursable costs. The majority in *MaineGeneral* concluded, however, that since nothing in *St. Luke's* suggested "that such a distinction played a significant role in the court's interpretation of the Board's statutory jurisdiction," *St. Luke's* holding that the Board had jurisdiction over matters not raised before the intermediary was applicable "whether the failure to raise the matter was deliberate or inadvertent." 205 F.3d at 498. The majority recognized that the Supreme Court suggested in *Bethesda* "that a provider's failure to request reimbursement from the intermediary for all costs to which it was entitled 'might well establish that a provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary.'" *Id*. at 499 (quoting *Bethesda*, 485 U.S. at 405, 108 S. Ct. at 1259). The majority discounted this suggestion, however, as "explicitly dictum." *Id*. Moreover, the majority opined that "the *Bethesda* dictum . . . could easily be taken to mean that this would be a reasonable factual inference in many cases," as "the opinion does not say expressly that this inference would be a binding rule of law." *Id*. at 500.

*MaineGeneral* has a dissenting opinion. First, the dissent noted that the court of appeals in *St. Luke*'s focused solely upon § 1395oo(d). The court did not address § 1395(a)'s "'dissatisfaction' criterion, which is a *threshold* jurisdictional provision." *Id*. at 503 (citing *Bethesda*, 485 U.S. at 405, 108 S. Ct. at 1259 ("Section 1395oo(d) . . . sets forth the powers and duties of the Board once its jurisdiction has been invoked . . . . pursuant to subsection (a) . . . .")). The dissent noted that in *St. Luke's*, the Secretary never asserted the argument that the provider failed to meet the "dissatisfaction" requirement since the provider's cost report in *St. Luke's*, unlike the provider's cost report in *MaineGeneral*, "could not have supported such an argument." *Id*. at 503 (Cyr, J.,

dissenting).  In self-disallowing costs, the provider in *St. Luke's* "in no sense indicated its satisfaction with the . . . NPR, but simply acknowledged that then-current . . . regulations granted neither the intermediary nor the Board the power to reimburse for such costs."  *Id.*  In contrast, the dissent reasoned, where a provider is not required to list costs as non-reimbursable, but rather "itself omits a reimbursable cost item from its report[,] it is not unreasonable for the Secretary to presume that the . . . provider is not 'dissatisfied,' especially since the healthcare provider has already been reimbursed by the intermediary for all amounts requested." *Id.*  Furthermore, the dissent opined, precluding Board jurisdiction where a provider omits a reimbursable cost item from its cost report "fosters important administrative policies: (i) affording . . . providers an incentive to prepare their cost reports with care and (ii) maximizing their use of the intermediary's expertise in cost assessment, as well as their utilization of the intermediary's investigatory resources."[3]

Finally, BCHS maintains that, unlike *MaineGeneral*, where the costs claimed were not presented to the intermediary, BCHS's error was included in the cost report filed with the intermediary.  When the intermediary reviewed BCHS's cost report, BCHS maintains, "it failed to discover" BCHS's error relating to the Adolescent Residential Program during its audit and, consequently, did not make any audit adjustment relating to this issue, "despite the fact that the cost report as filed by BCHS did not comport with the Secretary's own regulations." (Pl.'s Resp. at 5.) Therefore, BCHS argues, the Board has jurisdiction because it was dissatisfied with its intermediary's final determination as to the amount of reimbursement due BCHS.

---

[3] The dissent further opined that the Secretary's interpretation of "dissatisfied" as precluding Board jurisdiction where the provider omits a reimbursable cost item from its cost report "falls within the broad universe of plausible interpretations . . ., especially since Congress has afforded . . . [providers] an alternative mechanism for addressing these errors (i.e., reopening the NPR), see 42 C.F.R. § 405.1885(a)." *Id.* at 504.  The Secretary contends here that, rather than appealing its own cost reporting errors to the Board, BCHS should have submitted a request for reopening to its fiscal intermediary.  (Def.'s Resp. at 17 n.3.)  BCHS responded by noting that it did request a reopening of its cost report, but that the intermediary failed to take any action.  (Pl.'s Resp. at 7.)  An intermediary's decision denying reopening of an NPR is unreviewable.  *Your Home Visiting Nurse Serv., Inc. v. Shalala*, 525 U.S. 449, 454, 119 S. Ct. 930, 934 (1999).

The Seventh Circuit interpreted the regulation differently than did the First Circuit in *MaineGeneral*. The Seventh Circuit construed the Court's dictum in *Bethesda* to "strongly hint[]" that a provider who fails to request the reimbursement it is entitled to "should not be permitted to later claim to be 'dissatisfied' with the reimbursement it receives and thereby invoke the Board's jurisdiction." *Little Co. of Mary Hosp. v. Shalala*, 24 F.3d 984, 993 (7th Cir. 1994) ("*Little Co. I*"). The court explained that while § 1395oo "is curiously worded, the intent is plain that the provider must give the intermediary a first shot at the issue, provided the case is within the intermediary's competence," as the issue of costs relating to the Adolescent Residential Program would be because it does "not involve an issue of policy." *Little Co. of Mary Hosp. & Health Care Centers v. Shalala*, 165 F.3d 1162, 1165 (7th Cir. 1999) ("*Little Co. II*"). In *Little Co. II*, the hospital failed to claim reimbursement for a loss on the sale of land, a cost which was reimbursable and within the intermediary's competence. The hospital argued to the Board that it should be permitted to amend its report to deduct the land loss, but the Board rejected the appeal because "this would mean bypassing the fiscal intermediary." The court agreed that the intermediary must be given the first shot at the issue, which is not the case when the hospital fails to claim reimbursement on a cost report.

Placing a cost in a cost report as non-reimbursable, where no regulation would bar reimbursement of the cost, does not give the intermediary the first shot at the issue. "In fact, the intermediary does not usually even consider matters on the cost report for which no reimbursement is sought." *MaineGeneral*, 205 F.3d at 500. This Court is not aware of any requirement that an intermediary, as the Secretary's agent, comb through the provider's cost report and analyze those costs that the provider contends are non-reimbursable to determine if the provider is entitled to more reimbursement than it claimed in the first place. Indeed, 42 C.F.R. § 421.100(a)(1) provides that an

intermediary's functions are to ensure that "it makes payments only for services that are . . . [f]urnished to Medicare beneficiaries [and c]overed under Medicare." Moreover, the intermediary is to take "appropriate action to reject or adjust" a claim if the intermediary "determines that the services furnished or proposed to be furnished were not reasonable [or] not medically necessary." 42 C.F.R. § 421.100(a)(2).

In *Athens Community Hospital, Inc v. Schweiker*, 743 F.2d 1 (D.C. Cir. 1984), the court explained that it did "not think Congress intended to permit a provider to claim dissatisfaction based upon its own failure to request reimbursement of a cost item," for "[i]f a provider is unhappy with the reimbursement the intermediary allowed in such a case, it is the fault of the provider and not of the intermediary." *Id*. at 6. If a provider could claim dissatisfaction with an intermediary's determination over the provider's failure to receive reimbursement for a cost for which the provider did not even request reimbursement, "a provider could list every conceivable cost on its cost report, without claiming reimbursement, and hope that the intermediary will reimburse it for the reported but unclaimed costs, secure that it nevertheless will have 180 days following the NPR to concoct some reasons to urge upon the . . . [Board] for reimbursement for the unclaimed costs." *Id*.

There is no binding law in the Sixth Circuit and the result is harsh, but the undersigned finds the post-*Bethesda* interpretation of the statute by the Seventh Circuit in the *Little Co.* cases and the dissent in the First Circuit's *MaineGeneral* decision persuasive. *Bethesda* clarified that the Board's jurisdiction is set forth under 42 U.S.C. § 1395oo(a), rather than 42 U.S.C. § 1395oo(d) upon which courts had previously relied, and it is that interpretation of the Board's jurisdiction, applied in the *Little Co.* cases and expressed in the *MaineGeneral* dissent, that the Court follows in this case. In light of the rationale in those decisions, BCHS fails to show that the Board had jurisdiction to review and revise BCHS's cost report with respect to costs not first considered by the fiscal intermediary.

When a provider such as BCHS lists an item as non-reimbursable on its cost report when the item is actually reimbursable, submits that report to its fiscal intermediary, and realizes when it receives that intermediary's final determination that the provider failed to properly claim a reimbursable item, the provider's remedy is to request that the intermediary reopen its consideration of the report. If the fiscal intermediary declines to reopen the case, as occurred here, the provider may not claim dissatisfaction based on the omitted or mischaracterized cost that the intermediary did not consider when making its final determination. In other words, BCHS can only claim dissatisfaction on matters which the intermediary had a "first shot" at considering. Where a provider "does not ask its intermediary to reimburse it for all of the costs for which it is entitled to be reimbursed," as is the case with BCHS here, it "cannot, on appeal to the Board, first ask for new costs." *See Little Co. I*, 24 F.3d at 993. Much like Little Company of Mary Hospital, BCHS here is "precisely the 'provider . . . who . . . fail[s] to request from the intermediary reimbursement for all costs to which [it is] entitled under applicable rules.'" *Id*. (citing *Bethesda*, 485 U.S. at 405, 108 S. Ct. at 1259).

Since BCHS cannot claim dissatisfaction regarding a cost it did not claim on its cost report, it cannot appeal the intermediary's final determination to the Board based on the intermediary's non-consideration of that omitted or mischaracterized cost, because the Board only has jurisdiction to hear appeals once the threshold requirement of "dissatisfaction" is met.

### III. Conclusion

For the foregoing reasons, the Court will deny BCHS's motion for summary judgment and will grant Leavitt's motion for summary judgment.

An Order consistent with this Opinion will be issued.

Dated: October 26, 2006                              /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE